IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GERALD BOYCE,

        Petitioner,

v.                                                        Civ. Act. No. 16-817-LPS

CLAIRE DEMATTEIS, Commissioner,
Delaware Department of Corrections,
ROBERT MAY, Warden, and ATTORNEY
GENERAL OF THE STATE OF DELAWARE,

        Respondents.[1]

---

J. Brendan O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Attorney for Petitioner.

Kathryn J. Harrison, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

September 30, 2019
Wilmington, Delaware

---

[1]Commissioner Claire DeMatteis and Warden Robert May have replaced former Commissioner Robert M. Coupe and former Warden G.R. Johnson, original parties to the case. *See* Fed. R. Civ. P. 11(d).

STARK, U.S. District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Gerald Boyce ("Petitioner"). (D.I. 3) The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 9; D.I. 13) For the reasons discussed, the Court will dismiss Petitioner's § 2254 Petition as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## I. BACKGROUND

On May 1, 2013, pursuant to a consolidated plea agreement, Petitioner pled guilty to drug dealing.[2] (D.I. 9 at 1) On that same day, the Superior Court sentenced Petitioner to one year of Level V incarceration with no probation to follow. (D.I. 9 at 1) Petitioner did not file a direct appeal.

On April 30, 2014, Delaware's Office of Defense Services ("OPD") filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on Petitioner's behalf, which the Superior Court denied on December 3, 2014. (D.I. 9 at 2) The Delaware Supreme Court affirmed that decision on October 12, 2015. *See Aricidiacono v. State*, 125 A.3d 677 (Del. 2015).

On September 19, 2016, the OPD filed a § 2254 Petition on Petitioner's behalf, asserting that Petitioner's lack of knowledge of an evidence scandal at the Office of the Chief Medical Examiner ("OCME") was material to his decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970). (D.I. 3) Petitioner also argues that the Delaware Supreme Court made unreasonable findings of fact during his post-conviction appeal regarding OCME misconduct. The State filed an Answer asserting that the

---

[2]Petitioner filed another Petition for habeas corpus relief regarding his other case. *See Boyce v. Coupe*, 16-816-CFC.

Petition should be dismissed as time-barred or, alternatively, because the claims are meritless. (D.I. 13) Petitioner filed a Reply arguing that: (1) the Petition is timely filed pursuant to § 2244(d)(1)(D); or (2) the Petition should be deemed timely filed through the application of equitable tolling. (D.I. 13 at 5-8)

### A. OCME Criminal Investigation

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

2

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner's § 2254 Petition, filed in 2016, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B) or (C). He does, however, assert that he is entitled to a later starting date for AEDPA's limitations period – April 15, 2014 – under § 2244(d)(1)(D), because that is the date on which the State began to notify defendants in certain active cases about the OCME evidence misconduct. (D.I. 13 at 7)

Petitioner's § 2254 Petition, filed in 2016, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B) or (C). The State contends that the starting date for the limitations period is November 17, 2011, the date on which Petitioner's conviction became final. (D.I. 11 at 6) Petitioner, however, disagrees, and appears to assert that he is entitled to a later starting date for AEDPA's limitations period – April 15,

3

2014 – under § 2244(d)(1)(D), because that is the date on which the State began to notify defendants in certain active cases about the OCME evidence misconduct. (D.I. 15 at 7-8)

In order to determine if the April 15, 2014 revelation of the OCME misconduct constitutes a newly discovered factual predicate warranting a later starting date for the limitations period under §2244(d)(1)(D), the Court must first distill Petitioner's argument to its core. The argument appears to be two-fold. First, Petitioner contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that there was ongoing misconduct at the OCME during the time he was considering whether to enter a plea. Second, he contends that the Delaware state courts should have deemed his guilty plea involuntary under *Brady v. United States*, 397 U.S. 742, 748 (1970), due to the State's failure to disclose the *Brady v. Maryland* evidence, *i.e.*, the OCME misconduct. In short, Petitioner asserts that his lack of knowledge about the OCME misconduct is vital to his habeas Claim because that lack of knowledge rendered his guilty plea involuntary and unknowing under *Brady v. United States*.

Pursuant to *Brady v. United States*, a guilty plea is considered involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755. A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence.[3] *See United States v. Bagley*,

---

[3] A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

4

473 U.S. 667, 676 (1985). For purposes of the inquiry under § 2244(d)(1)(D), whether or not the OCME misconduct affected, or could have affected, Petitioner's decision to plead guilty depends on whether the drugs in his case were tested by the OCME and whether the results were provided to him prior to entering a plea. Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for this involuntary plea/*Brady v. Maryland* Claim, Petitioner must show that (1) the drug evidence in his case was tested by the OCME and he received the results of the test before entering a plea; and (2) exercising due diligence, he could not have learned that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until April 15, 2014.

Petitioner has not met his burden, because he has not satisfied the first prong of this test. Petitioner entered his guilty plea on May 1, 2013, and the OCME report concerning the drugs in his case is dated May 6, 2013. (D.I. 9 at 6 n.16; D.I. 15-2 at 70) If the OCME test results were not completed and/or provided to him until May 6, 2013, then the test results cannot be said to have played a factor in his decision to plead guilty on May 1, 2013. Thus, the Court need not address the second prong of the test, and concludes that Petitioner has not established a factual predicate triggering a later starting date for the limitations period under § 2244(d)(1)(D). Accordingly, the one-year limitations period began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on May 1, 2013, and he did not appeal that judgment. Therefore, Petitioner's conviction became final on May 31, 2013. *See* Del. Supr. Ct. R. 6(a)(ii) (establishing a thirty day

5

period for timely filing of notice of appeal). Applying the one-year limitations period to that date, Petitioner had until May 31, 2014 to timely file his Petition. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to anniversary method, *i.e.*, limitations period expires on anniversary of triggering event).

Petitioner did not file the instant § 2254 petition until September 19, 2016, approximately two years and four months after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled.

**A. Statutory tolling**

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Here, when Petitioner filed his Rule 61 motion on April 30, 2014, 333 days of AEDPA's limitations period had already expired. The Rule 61 motion tolled the limitations period from April 30, 2014 through October 12, 2015, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of that motion. The limitations clock started to run again on October 13, 2015, and adding the remaining thirty-two days of the limitations period to that date demonstrates

that the last day on which Petitioner could have filed a timely Petition was November 16, 2015.[4] Petitioner filed the instant Petition on September 19, 2016. Thus, even with the applicable statutory tolling, the Petition is time-barred, unless equitable tolling is available.

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's obligation to act diligently applies to both his filing of the federal habeas application and to his filing of state post-conviction applications. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). In turn, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*See Jones*, 195 F.3d at 159; *Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Petitioner contends that the Court should equitably toll the limitations period from May 31, 2013 through April 30, 2014, the date on which he filed his Rule 61 motion, and deem his Petition timely filed. He asserts that he was unable to file his Rule 61 motion until April 30, 2014, and his

---

[4]Since the limitations period actually expired on November 15, 2015, a Sunday, the period extended through the end of the day on November 16, 2015. *See* Fed. R. Civ. Proc. 6(a)(1)(C).

7

delay in filing (presumably both the instant Petition and his Rule 61 motion) "was caused by extraordinary circumstances created by a deceptive member of the prosecution team – *i.e.* OCME." (D.I. 13 at 8) He contends that it "would not be in keeping with the principles of equity to penalize [Petitioner] because, through no fault of his own, he was unable to file his motion prior to April 30, 2014. Further, because Petitioner's claim arises from systemic government misconduct, the interest of justice requires his claim be heard." (D.I. 13 at 8)

Petitioner's equitable tolling argument is unavailing. He raised the issue of the OCME drug evidence scandal in his Rule 61 motion that he filed in the Delaware Superior Court on April 30, 2014, and the Delaware Supreme Court affirmed the denial of the Rule 61 motion on October 13, 2015. Petitioner could have filed a timely "protective" § 2254 petition[5] in this Court along with a motion to stay the proceeding while awaiting the Delaware state courts' post-conviction decisions, or he could have filed a habeas petition during remaining thirty-two days left in AEDPA's limitations period after the Delaware Supreme Court's post-conviction decision on October 13, 2015. Given these dates, Petitioner has not demonstrated that he (or his counsel) was prevented from filing a basic habeas petition in this Court. *See Ross v. Varano*, 712 F.3d 784, 804 (3d Cir. 2013) ("[F]or a petitioner to obtain relief [via equitable tolling] there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition."). Similarly, Petitioner's failure to timely file a petition during the thirty-two days remaining in AEDPA's limitations period after the Delaware Supreme Court issued its post-conviction

---

[5]The Supreme Court has explained that a "petitioner's reasonable confusion about whether a state filing would be timely" when attempting to exhaust state remedies may constitute good cause for him to file a "protective petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

8

appellate decision also precludes a finding that Petitioner exercised the requisite "due diligence" to warrant equitably tolling the limitations period. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (once extraordinary circumstance ends, petitioner must exercise reasonable diligence in filing his petition).

Finally, to the extent the delayed filing was due to a miscalculation or mistake on the part of the attorney(s) representing Petitioner, "attorney error, miscalculation, inadequate research, or other mistakes" do not amount to extraordinary circumstances for equitable tolling purposes. *See Hendricks v. Johnson*, 62 F. Supp. 3d 406, 411 (D. Del. 2014). In short, Petitioner cannot demonstrate that the OCME scandal, and/or the timing of the State's disclosure about the OCME scandal, actually prevented him from timely filing a petition seeking federal habeas relief. For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will deny the instant Petition as time-barred.[6]

## III. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the

---

[6]Having concluded that it must deny the Petition as time-barred, the Court will not address the State's alternate reason for denying the Petition.

petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.